IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
ST. THOMAS AND ST. JOHN DIVISION

| | | |
|---|---|---|
| OCWEN USVI SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 3:24-cv-00005 |
| | ) | |
| v. | ) | |
| | ) | |
| GOVERNMENT OF THE | ) | |
| UNITED STATES VIRGIN ISLANDS | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

*I)*      *<u>Introduction:</u>*

Ruling in a tax dispute over a century ago, the Supreme Court said: "Men must turn square corners when they deal with the government." *Rock Island, A. & L.R. Co. v. United States*, 254 U.S. 141, 143 (1920). The corollary to this uncontroversial precept is that the government must likewise turn square corners when dealing with its citizens. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020).

Because Defendant Government of the Virgin Islands ("GVI") has failed to turn "square corners" in its dealings with Plaintiff Ocwen USVI Services, LLC ("Ocwen") and because the GVI propounds an unpersuasive (and novel) legal theory, the Court hereby **DENIES** the GVI's partial motion to dismiss Count IV of the complaint (ECF No. 137) for the reasons set forth herein.

The Court is asked here to decide a narrow question of law underlying Count IV of Ocwen's complaint: whether a closing agreement executed pursuant to 26 U.S.C. § 7121—applicable to the Virgin Islands under the mirror tax code, 48 U.S.C. § 1397—functions as a binding

1

contract; and, whether the GVI's subsequent failure to pay the full agreed-upon refund (after making partial payments) constitutes a breach of that contract. Ocwen contends that it does.

The GVI, despite entering into a valid closing agreement under § 7121, has lately begun pivoting towards an argument that 26 U.S.C. § 7422 preempts common law causes of action for income tax refunds[1]. Accordingly, the GVI maintains that the Court must dismiss Count IV for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c).

## II)    *Procedural Background of Jurisdiction, Immunity and the Nature of the GVI's Motion:*

### a.    *Subject Matter Jurisdiction:*

Before addressing the GVI's arguments, the Court must establish the basis for its subject-matter jurisdiction over Count IV. The burden of proving jurisdiction rests with Ocwen, but the weakness of the GVI's legal theory does not absolve the Court of its independent obligation to ensure that this necessary threshold is met before reaching the substantive issues.

The District Court of the Virgin Islands possesses the jurisdiction of a district court of the United States, and it possesses exclusive jurisdiction over all civil proceedings in the Virgin Islands with respect to the income tax laws applicable to the Virgin Islands, regardless of the amount involved. *See* 48 U.S.C. § 1612(a). Indeed, the Third Circuit held many years ago that because the U.S. Tax Court lacks jurisdiction over Virgin Islands territorial tax liabilities, Congress vested exclusive original jurisdiction over Virgin Islands income tax matters in the District Court of the Virgin Islands under the Organic Act. *See Dudley v. Comm'r of Int. Rev.,* 258 F.2d 182 (3d Cir. 1958).

---

[1] Despite the GVI's repeated characterization of Ocwen's claim in Count IV as a common law cause of action, the reality is that Ocwen makes a claim based upon 26 U.S.C. § 7121.

With that framework in mind, Count IV of the Ocwen complaint seeks to enforce a closing agreement executed under 26 U.S.C. § 7121, as that section applies in the Virgin Islands through 48 U.S.C. § 1397. The closing agreement determines Ocwen's territorial income tax liability for 2013, 2014, and 2015 and fixes the refunds owed on that liability. A suit to enforce it is a civil proceeding with respect to the income tax laws applicable to the Virgin Islands. Accordingly, Section 1612(a) supplies jurisdiction on its own terms.

b. *Sovereign Immunity:*

Separate from the threshold issue of jurisdiction, this Court must also address the sovereign immunity of the Virgin Islands government. Although § 1612(a) confers subject-matter jurisdiction upon this Court, that statute does not waive the territorial government's sovereign immunity; accordingly, the GVI asserts sovereign immunity as an affirmative defense in its filings.

However, after a careful review of the law, the Court observes that when the Government of the Virgin Islands entered into a § 7121 closing agreement with Ocwen, it executed a final, binding settlement regarding tax liability, and it did so within an express statutory framework established by Congress. As the GVI itself acknowledged, it entered into a valid contract with Ocwen that explicitly committed the territorial government to a specific amount to be refunded and set forth a schedule of payments to be made by the GVI.

To this point, the Supreme Court has held that when the government enters into contractual agreements authorized by law, its rights and duties are governed by standard principles of contract law, and it cannot invoke sovereign prerogatives to escape contractual obligations. See *United States v. Winstar Corp.*, 518 U.S. 839 (1996). As such, the Court finds that the GVI waived its immunity regarding the enforcement of that specific agreement because the government cannot now invoke sovereign immunity to unilaterally break a settlement it legally executed.

Furthermore, in light of the statutory text of § 7121, once a valid closing agreement is in place, the suit is no longer a tax refund claim. Rather, it is an action to seek enforcement of a finalized settlement.

    c.   *Nature of the GVI's Motion to Dismiss:*

The GVI moves to dismiss Count IV under both Rule 12(b)(1) and Rule 12(c) of the Federal Rules of Civil Procedure. Because the two rules call for different treatment, the Court states at the outset which standard governs its consideration of the motion. A motion under Rule 12(b)(1) may present either a facial or a factual challenge to the Court's jurisdiction. A facial challenge contests the sufficiency of the pleadings. *See Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). On such a motion, the Court accepts the complaint's well-pleaded allegations as true and construes them in the light most favorable to the plaintiff. *See McGovern v. City of Philadelphia*, 554 F.3d 114 (3d Cir. 2009).

The GVI's motion presents a facial challenge. The GVI does not dispute any fact alleged in Ocwen's complaint. Rather, the GVI contends instead that 26 U.S.C. § 7422 forecloses Count IV as a matter of law, whatever Ocwen has alleged. The Court therefore accepts the allegations of the complaint as true for purposes of this motion and draws all reasonable inferences in Ocwen's favor.

Where this opinion recites facts drawn from the statement of undisputed facts, [ECF No. 184], or elsewhere in the record, it does so because those facts stand admitted on the pleadings. The Court has weighed no evidence and resolved no dispute of fact. Nothing stated in this opinion constitutes a finding of fact binding on either party at any later stage of this litigation.

*III)*    *Statutory & Regulatory Scheme:*

The sources of the Virgin Islands income taxing authority include the Internal Revenue Code of 1986 (IRC) and the Naval Service Appropriations Act of 1921, codified at 48 U.S.C. § 1397, which establish the principle that the IRC applies in the Virgin Islands under a "mirror system," whereby "Virgin Islands" is substituted for "United States" wherever necessary to give the IRC proper effect in the territory, and vice versa. *See Bizcap, Inc. v. Olive*, 892 F.2d 1163, 1165 (3d Cir. 1989). Under this statutory scheme, bona fide residents of the Virgin Islands are required to "file an income tax return for the taxable year with the Virgin Islands." 26 U.S.C. § 932(a)(2), (c).

Although Virgin Islands residents who satisfy the requirements of § 932 pay their taxes to the Virgin Islands Bureau of Internal Revenue (VIBIR) rather than the IRS on the U.S. Mainland, "the Virgin Islands' ability to engage in tax competition with the United States is limited by 26 U.S.C. § 934, which provides that '[t]ax liability incurred to the Virgin Islands pursuant to [the mirror code] . . . shall not be reduced or remitted in any way, directly or indirectly, whether by grant, subsidy, or other similar payment, by any law enacted in the Virgin Islands, except to the extent provided in subsection (b).'" *See Vento v. Dir. of V.I. Bur. of Int. Rev.*, 715 F.3d 455, 465 (3d Cir. 2013).

Congress has, nevertheless, carved out a narrow exception to this general rule in 26 U.S.C. § 934(b), which authorizes the Virgin Islands to enact the Economic Development Program (EDP) to promote local economic activity. Companies licensed under the EDP, that are doing business in the Virgin Islands, can receive a 90% tax reduction on certain approved income that is sourced in the Virgin Islands. At all times relevant to this matter, Ocwen was one such company, duly licensed by the GVI to do business in the Virgin Islands as a participant in the EDP. Ocwen is a

5

loan servicing company and successor to Ocwen Mortgage Services, Inc. ("OMS") which is the entity that filed the tax returns in question.  [ECF. No. 1 ¶¶ 1-2].

*IV)*        *Audit Determination & Acknowledgement of Refunds Due by GVI:*

The GVI does not dispute the fact that Ocwen timely filed its Form 1120 Corporate Income Tax Returns for the 2013, 2014, and 2015 tax years, and subsequently sought extensions and filed various amended tax returns for those same years with the VIBIR, as required by law.  [ECF. No. 184, ¶¶ 8, 10, 11, 12].  The GVI does not dispute the fact that Ocwen made regular estimated tax payments throughout the relevant tax years, as required by the applicable law and regulations.

On July 23, 2018, the VIBIR initiated an audit of the Ocwen returns for 2013, 2014, 2015. That audit was concluded in 2021 when the VIBIR accepted Ocwen's tax returns, determining that its refund claims for those years were allowable.  [ECF. No. 1 ¶¶ 27, 30-31].  Specifically, on January 21, 2021, the VIBIR executed a Form 4549 examination report accepting Ocwen's amended tax return for 2013, as filed, and agreed that Ocwen was entitled to a refund of $7,680,772. [ECF No. 1, Ex. 12].  On February 16, 2021, the VIBIR executed a Form 4549 examination report accepting Ocwen's amended tax return for 2014, as filed, and agreed that Ocwen was entitled to a refund of $6,024,000. [ECF No. 1, Ex. 15].  Finally, on April 14, 2021, the VIBIR executed a Form 4549 examination report accepting Ocwen's amended tax return for 2015, as filed, and agreed that Ocwen was entitled to a refund of $14,218,462.  [ECF No. 1, Ex. 16].

Furthermore, on May 25, 2021, the VIBIR sent Ocwen a letter stating that it had concluded its examinations and audits, and was accepting Ocwen's returns.  [ECF. No. 1, Ex. 17].  Thereafter the Director of the VIBIR, Joel Lee, sent an email to Ocwen stating that the VIBIR ". . . recognizes the outstanding refunds pending for Ocwen for tax years 2013, 2014, and 2015" and proposed a payment plan.  [ECF No. 1, ¶ 49].  The GVI disputes none of these facts.

Throughout the VIBIR's multi-year examination of Ocwen's 2013, 2014, and 2015 tax returns, nothing in the record suggests that the GVI ever questioned their accuracy, suspected fraud or misrepresentation by Ocwen, or disputed the sourcing of Ocwen's reported income.  To the contrary, after a rigorous, multi-year audit, the VIBIR itself acknowledged finding no deficiencies in the Ocwen tax returns. Indeed, the VIBIR's execution of the Form 4549 examination reports demonstrates the GVI's total satisfaction that Ocwen was entitled to refunds of $7,680,772 for 2013, $6,024,000 for 2014, and $14,218,462 for 2015.

V)       *GVI's Administrative Stalling and Apparent Executive Refusal to Issue Refunds:*

What followed was a baneful delay in the GVI's issuance of those refunds.  Despite extensive outreach via phone, email, and written correspondence between Ocwen and various GVI officials, up to and including communications with Virgin Islands Governor Albert Bryan Jr., Ocwen did not receive the tax refunds that the GVI itself acknowledged were due.

On February 10, 2022, after months of unsuccessfully attempting to resolve this situation, and having no success in multiple, repeated contacts with a variety of GVI officials up and down the chain of command, counsel for Ocwen contacted Governor Bryan via text message to discuss the matter.  Counsel briefly described to Governor Bryan the issue regarding the stalled refunds—which the GVI acknowledged owing—and requested a payment plan.  Governor Bryan replied by text saying: "I think it is totally unacceptable that we pay any EDC company a return [sic].  After we have given them a 90% reduction of their tax liability."  (ECF No. 1, page 8).

This unedifying remark by the Chief Executive of the GVI improperly asserts a refusal to return excess taxes lawfully owed by the territory to Ocwen.  Therefore, it bears highlighting something obvious:  Refunding excess tax is not a sovereign prerogative in the tradition of bewigged *Ancien Régime* monarchs, who could choose to dispense (or not dispense) relief to their subjects

7

on a whim or caprice.  Rather, the repayment of tax overpayments, with interest, is a mandatory

duty under law.  As stated in 26 U.S.C. § 6402(a):

> "In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and *shall* . . . refund any balance to such person" (emphasis added)

VI)       *The 2022 Closing Agreement and Subsequent Default by the GVI:*

After many months of getting nowhere with the GVI, Ocwen filed suit in this court seeking

a refund of its tax overpayments in November 2022.  (3:22-CV-00066).  At no time in that litigation

did the GVI put forward an argument that § 7422 offers Ocwen the sole avenue to seek relief as to

these unpaid tax refunds.  Rather, the GVI moved expeditiously to settle the matter, and in December of 2022, Ocwen and the GVI entered into a closing agreement, pursuant to 26 U.S.C. § 7121.

[ECF No. 8].  This agreement was signed by VIBIR Director Joel Lee, and Ariel Smith, who was

then serving as the Attorney General for the Virgin Islands.  [ECF. No. 184, ¶ 29].  In this agree-

ment, the GVI acknowledged that it owed Ocwen tax refunds totaling almost $28,000,000.00, plus

interest.  [ECF. No. 184, ¶ 31].  This agreement also set forth a schedule of payments that had been

negotiated between the parties and agreed to by the GVI as follows:

| Tax Year | Due Date | Amount |
|---|---|---|
| 2013 | No later than January 15, 2023 | $1,000,000 |
| 2013 | No later than June 30, 2023 | $6,680,772 |
| 2014 | No later than December 31, 2023 | $6,024,000 |
| 2015 | No later than June 30, 2024 | $7,109,231 |

| 2015 | No later than December 31, 2024 | $7,901,231 |
|------|----------------------------------|------------|

[*See* ECF. No. 184, ¶ 31].

These amounts were to be increased by accrued statutory interest on the balances due. [ECF No. 1, Ex. 18 at paragraph 2.a]. This agreement between the GVI and Ocwen was the first time that the territory had entered into a § 7121 closing agreement with a taxpayer. [ECF No. 344, ¶ 9].

The GVI initially held up its side of the bargain, making a timely payment of $1,000,000 on January 11, 2023, for the refund due to Ocwen for the 2013 tax year. [ECF No. 184, ¶ 39]. The GVI then made a second timely refund payment on June 29, 2023, in the amount of $7,627,612.85, also for the refund due to Ocwen for the 2013 tax year, plus interest.[2] [ECF No. 184, ¶ 41]. After making this second payment, the GVI failed to make the scheduled tax refund payments to Ocwen that were due on December 31, 2023, June 30, 2024, and December 31, 2024 [ECF No. 184, ¶¶ 46, 47, 48]. The GVI disputes none of these facts.

This lawsuit by Ocwen ensued on February 8, 2024, to enforce the 2022 closing agreement that had been consummated with the GVI.

VII)    *Legal Analysis:*

a.    *Finality and Enforceability of § 7121 Closing Agreements:*

26 U.S.C. § 7121 states as follows:

---

[2] There remains relatively minor dispute as to the refund payment for the 2013 tax year, with Ocwen believing that the GVI miscalculated the accrued interest, resulting in the GVI's refund payments falling short by $189,772.27. Discussions between the GVI and Ocwen ensued as to the miscalculation of interest, with both parties agreeing on the figure for the remaining interest due on December 13, 2023. However, that remaining interest due on Ocwen's 2013 tax refund remains unpaid by the GVI to this day.

(a) Authorization: The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period.

(b) Finality: If such agreement is approved by the Secretary (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

(1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and

(2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

As made clear in the unambiguous text of 26 U.S.C. § 7121—which applies to the Virgin Islands through the mirror tax system under 48 U.S.C. § 1397—closing agreements are binding, non-modifiable contracts, which are to be interpreted by Courts ". . . according to general federal contract law principles." *Bethlehem Steel Corp. v. United States*, 270 F.3d 135, 139 (3d Cir. 2001). Additionally, as the Court of Federal Claims has observed: "Closing agreements are authorized, and limited by, the language of the statute. To the extent that the statute conflicts with general and otherwise governing contract law principles, the statute governs. But closing agreements are contracts nevertheless, and courts have repeatedly stated that, in analyzing closing agreements, the court must use ordinary contract principles." *Marathon Oil Co. v. United States*, 42 Fed. Cl. 267, 274 (1998).[3]

---

[3] The court makes note of these additional cases supporting the proposition that closing agreements are contracts: "[closing agreements] are contracts in the ordinary legal sense of the term, because they contain binding promises." *United States v. National Steel Corp.*, 75 F.3d 1146, 1150 (7th Cir. 1996). "A closing agreement is a contract and generally is interpreted under ordinary contract principles." *Rink v. Comm'r*, 47 F.3d 168, 171 (6th Cir. 1995).

Furthermore, in interpretating the statute, the Tax Court has said that: "Closing agreements are meant to insure the finality of liability for both the taxpayer and the IRS. This is why courts have **strictly enforced** closing agreements, finding them **binding and conclusive** on the parties . . ." *Hopkins v. Comm'r*, 120 T.C. 451, 457 (2003) (emphasis added).

While it is true that the statute does permit these closing agreements to be set aside upon a showing of "fraud, or malfeasance, or misrepresentation of a material fact," the case law teaches that the type of malfeasance which may warrant setting aside a closing agreement relates specifically to malfeasance "in the making of the agreement." *Ingram v. Comm'r*, 32 B.T.A. 1063, 1065 (1935), *aff'd per curiam*, 87 F.2d 915 (3d Cir. 1937).  Furthermore, as the Tax Court observed in *Smith v. Comm'r*, courts have consistently adhered to the rule enunciated in *Ingram*: namely that a closing agreement may be set aside only if a party was induced to sign it, or if it was obtained through fraud or misrepresentation. 159 T.C. 33, 61 (2022) (internal quotation marks omitted).

Just as the record contains no evidence of problems with Ocwen's 2013-, 2014-, and 2015- income tax returns during VIBIR's extensive review and audit, it likewise contains no evidence of misrepresentation, fraud, or malfeasance by Ocwen in executing the 2022 final closing agreement with the GVI.  Indeed, it bears emphasizing that from the moment the VIBIR initiated its audit in 2018 until Ocwen filed this enforcement action in 2024, the GVI disputed neither the taxes paid, nor the refund owed.  Therefore, the Court finds it passing strange that the GVI now hotly disputes an obligation it repeatedly acknowledged for years, and about which there was never any genuine disagreement.

b. <u>*Relevant Treasury Department Regulations:*</u>

An additional important source that has been considered by the Court is the corpus of regulations duly promulgated by the Treasury Department.  These regulations explicitly confirm the

11

statutory language, and they are often echoed in other Courts' decisions that have adjudicated disputes surrounding these § 7121 agreements. The Treasury Department regulations state that neither the government *nor a court* may alter or disregard a properly executed closing agreement, or any refund arising from it, absent a showing of fraud, malfeasance, or misrepresentation. *See* 26 C.F.R. § 301.7121-1(a) (emphasis added). These regulations also state: "A closing agreement may be entered into in any case in which there appears to be an advantage in having the case permanently and conclusively closed . . . and it is determined by the Commissioner that the United States will sustain no disadvantage through consummation of such an agreement."[4]

Finally, in subsection (c) these regulations go on state as follows:

> (c) *Finality.* A closing agreement which is approved within such time as may be stated in such agreement, or later agreed to, shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact:

> (1) The case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and

> (2) In any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

The unambiguous text of these regulations underscores the finality of closing agreements entered into under § 7121.

The Court concludes that the body of law government § 7121 closing agreements leaves no room for the GVI to wiggle out of the bargain it struck with Ocwen. Closing agreements ". . . shall not be annulled, modified, set aside or disregarded." *Id.* "[C]ourts have strictly enforced [§

---

[4] In light of the mirror code, one need only substitute the term "VIBIR" for "Commissioner" and "Virgin Islands" for "United States."

7121] closing agreements, finding them binding and conclusive . . . even if the tax at issue is later declared to be unconstitutional or in conflict with other internal revenue sections." *In re: Hopkins*, 146 F.3d 729, 733 (9th Cir. 1998).

c.  *The Presumption of Official Regularity:*

Because this closing agreement was executed by the Director of the VIBIR and the Attorney General of the Virgin Islands, both officials at the highest levels within the territorial government, the Court infers that Ocwen reasonably relied on the fact that officials were acting in good faith to "permanently and conclusively" resolve this matter.  Consistent with the statutory and regulatory language, the Court likewise infers that these high-level officials had determined the Virgin Islands would sustain no disadvantage in the consummation of such an agreement.  This Court's inferences above are based upon the presumption of official regularity. *See, e.g., Mecom v. Comm'r*, 101 T.C. 374, 388 (1993), concluding that an official had authority to sign a consent to extend the limitations period when officials with the same title regularly executed such agreements and noting that "public officials are presumed to have properly discharged their official duties." *Aff'd*, 40 F.3d 385 (5th Cir. 1994).  In light of the presumption of official regularity, coupled with the absence of evidence that Ocwen made any misrepresentation when entering into the closing agreement, causes this Court grave concern about the GVI's *volte-face* after acknowledging for years that it owed the tax refunds to Ocwen.

d.  *The GVI's § 7422 Preemption Defense:*

Notwithstanding a statute authorizing closing agreements, duly promulgated implementing regulations, and a plethora of decisions from the U.S. Tax Court and Courts of Appeals nationwide, the GVI bashes on regardless, arguing that the Court need look no further than 26 U.S.C. § 7422, the section of the IRC governing civil actions for tax refunds.   The GVI asserts that this statute

preempts common law causes of action, by establishing the statutory prerequisites and procedural rules for taxpayers seeking to recover internal revenue taxes, penalties, or alleged overpayments in court.

One key provision of § 7422 includes a requirement that a taxpayer must pay the full amount of the assessed tax liability for the tax period in question before an administrative claim or refund suit can proceed. *See Flora v. United States*, 357 U.S. 63 (1958), *aff'd on reh'g*, 362 U.S. 145 (1960). Then, after the full amount of tax is paid, the taxpayer is required to exhaust administrative remedies (§ 7422(a)). Under this provision, a prior administrative filing is mandatory before the filing of any civil action.

e.  *The Court's Rejection of the GVI's § 7422 Preemption Defense:*

The GVI leans heavily—far too heavily—on § 7422(a), in ways that this Court finds unpersuasive. For example, in support of their position, the GVI relies on *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59 (3d Cir. 2008), to contend that § 7422 provides the "exclusive cause of action in any court 'for the recovery of any internal revenue tax . . . alleged to have been excessive or in any manner wrongfully collected.'" *Umland*, 542 F.3d at 67–69. The GVI goes on to argue that claims made under other sources of law are "preempted by the exclusive remedy afforded by 26 U.S.C. § 7422 so as not to interfere with the comprehensive administrative scheme established under the Internal Revenue Code." [ECF No. 138, p. 6].

The Court strongly rejects the GVI's repeated mischaracterization of the precise nature of Ocwen's complaint under Count IV. For example, the GVI asserts that Ocwen "has impermissibly couched its income tax refund claims as a common law breach of contract claim." [ECF. No. 138, p. 3]. This assertion by the GVI is wrong. Ocwen's claim is not a common law contract claim.

14

Rather, it is a claim firmly grounded in § 7121 of the IRC, and, as such it cannot be waved away by the mere invocation of § 7422, as the GVI attempts to do here.

Accordingly, the Court cannot accept the GVI's reliance on § 7422 for the following four distinct, yet interrelated reasons:

###### i. *Relevance of the Preexisting Administrative Record:*

Even if the Court accepted the GVI's premise that § 7422 provides Ocwen's sole avenue for relief (which it does not), Ocwen has indisputably paid all taxes owed and satisfied the exhaustion requirement under any reasonable standard. First, it is undisputed that Ocwen paid the full assessed tax liability for the tax periods in question. Second, to be sure, the Court recognizes that refund actions under 26 U.S.C. § 7422 are *de novo* proceedings requiring a determination of the taxpayer's actual tax liability rather than a mere review of the administrative record. *See Lewis v. Reynolds*, 284 U.S. 281, 283 (1932). That standard, however, does not make the administrative record irrelevant. Here, the VIBIR audited Ocwen's filings for years and executed three separate Form 4549s accepting the returns as filed. That exhaustive review fatally weakens the GVI's claim that Ocwen must now pursue some nebulous, heretofore undefined administrative remedy before commencing a civil action in Court.

The Form 4549s for the 2013, 2014, and 2015 tax years are persuasive evidence that the VIBIR examined the returns, identified no deficiencies, and accepted the reported figures. The GVI fails to articulate what administrative remedies remain to be exhausted by Ocwen, or to what end? Rather, based on the record developed in this litigation, it seems manifestly clear to this Court that the GVI has recently begun clinging to § 7422 in a *post hoc* attempt to evade its lawful refund obligations. This Court will not be a party to such tactics.

###### ii. *Canons Against Implied Repeal and in Favor of Harmonious Statutory Reading:*

15

Accepting the GVI's argument that § 7422 provides the exclusive cause of action for recovering excessively collected taxes would effectively render § 7121 a nullity. Although the GVI stops short of explicitly arguing that § 7121 is invalid, that would be the practical effect of its position. It makes little sense for Congress to authorize closing agreements and declare them "final and conclusive" under § 7121, while simultaneously insist that § 7422 provides an exclusive administrative mechanism to resolve disputes that arise from those closing agreements. One way in which the GVI elides this point is its repeated miscasting of Ocwen's Count IV as a common law cause of action, when in reality, Count IV is rooted firmly in § 7121 of the IRC

Under the longstanding canons against implied repeal and in favor of harmonious statutory reading, courts must avoid the incongruous result of ignoring one part of the IRC (§ 7121) and looking at § 7422 instead. The Third Circuit has recently held that: "We do not examine the [statutory] language in isolation. Rather, in examining the statutory language, we take account of the specific context in which that language is used, and the broader context of the statute as a whole. In doing so, we must give effect, if possible, to every clause and word of [the] statute." *United States v. Giraud*, 160 F.4th 390, 397 (3d Cir. 2025) (internal quotations and citations omitted).

Conversely, holding the GVI to the agreement it struck under § 7121 does no injury to the comprehensive administrative scheme for recovery of any tax excessively or wrongfully collected under § 7422 that was established by Congress. Supreme Court jurisprudence has long made clear that: "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974).

16

### iii.  *Inapplicability of Umland, Patterson, and Hefferman Decisions:*

The GVI's reliance on *Umland v. PLANCO Financial Services, Inc.* is misplaced.  In *Umland*, an employee sued her former employer to recover excess FICA taxes withheld after she was misclassified as an independent contractor.  In that context—a private party suing a third-party withholding agent—requiring compliance with § 7422's exclusive administrative remedies made perfectly good sense.  Here, the context is entirely different.  Ocwen is not suing a private employer to recoup misallocated taxes; it seeks to enforce a valid closing agreement under § 7121 after the GVI made only partial payment.  Because there is no dispute regarding the underlying tax liability or the overpayment amount, *Umland* does not control.

The GVI's reliance on this Court's decision in *Patterson v. U.S. Virgin Islands*, Civil No. 2010-126, 2014 WL 551811 (D.V.I. Feb. 12, 2014), is unavailing.  *Patterson* involved a dispute over whether the plaintiff was a bona fide Virgin Islands resident in the context of seeking a tax refund from the VIBIR after paying taxes to the Internal Revenue Service (IRS) on the mainland.  Those facts bear no resemblance to Ocwen's prolonged effort to recoup a tax overpayment that the VIBIR itself has repeatedly acknowledged owing.

Similarly, the GVI's reliance on *Hefferman v. U.S. Virgin Islands*, Civil No. 2009-87, 2010 WL 4942160 (D.V.I. Nov. 30, 2010) is misplaced.  In *Hefferman*, a taxpayer sued the Virgin Islands to recover tax overpayments, asserting a claim under § 7422 alongside common law claims for unjust enrichment and conversion.  This Court dismissed Hefferman's common law claims, and the Court acknowledges that the underlying facts in *Hefferman* more closely resemble those in Ocwen.  Nevertheless, a critical distinction remains: the parties in *Hefferman* never entered into a § 7121 agreement, and, as such, the Court in Hefferman was grappling with a different set of legal

issues.  Because of a lack of a § 7121 agreement, this Court views *Hefferman* as a decision with limited applicability and usefulness in assessing the issues raised by Ocwen.

In the absence of a § 7121 agreement, the court rightly dismissed the common-law claims in *Hefferman*, holding that the taxpayer was bound by the exclusive remedies of § 7422. Ocwen presents a fundamentally different situation. This Court declines the GVI's invitation to overlook the valid and binding nature of the § 7121 agreement that the GVI executed but now seeks to disavow.

#### iv.  *Lack of Precedent:*

Perhaps most telling, the GVI fails to cite a single precedent—binding or persuasive, published or unpublished—in which any federal court has permitted the government to use a § 7422 action to modify or invalidate a closing agreement duly executed under § 7121.  The complete absence of authority for the GVI's position confirms that its theory is as unfounded as it is novel.

### VIII)    *Conclusion:*

For these reasons, the Court concludes that it retains subject-matter jurisdiction over Count IV and rejects the GVI's § 7422 preemption defense. Guided by the applicable statute, regulations, and case law, the Court is persuaded that the closing agreement constitutes a binding contract under § 7121 governed by general contract principles.

Consequently, the Court denies the GVI's motion to dismiss Count IV.  An appropriate order will issue.


**Dated:** August 7, 2026.                                   *s/ Evan Rikhye*

_____
**EVAN RIKHYE**
**United States District Judge**